<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MAURICE PIERCE,** | **Civil Action No. 24-9499 (SDW-JRA)** |
| **Plaintiff,** | |
| v. | **OPINION** |
| **DR. HERBERT SMYCZEK, et al.,** | |
| **Defendants.** | |

**WIGENTON**, District Judge:

Presently before this Court is Defendants' Herbert Smyczek, Maxim Casas, and Michael D'Antico (collectively "Defendants") Motion to Dismiss ("Motion") Plaintiff Maurice Pierce's ("Plaintiff") complaint pursuant to 42 U.S.C. § 1983 ("Complaint"). (D.E. 18). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **DENIED**.

## I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff was a pre-trial detainee at Hudson County Correctional Center ("HCCC") in Kearny, New Jersey at the commencement of this action. (D.E. 1 ("Compl.") at 2-3.) Defendant Dr. Herbert Smyczek ("Dr. Smyczek") was employed as a physician at HCCC during Plaintiff's detention. (*Id.* at 5.) Defendant Maxim Casas ("Ms. Casas") served as the Director of Nursing at HCCC, and Defendant Michael D'Antico ("Mr. D'Antico") was the Health Services Administrator at HCCC. (*Id.*)

According to Plaintiff, on February 8, 2024, he was transferred from HCCC to Newark, New Jersey to attend an appointment with an audiologist based on hearing concerns. (Compl. at

6.)  During the appointment, the audiologist conducted a hearing test and advised Plaintiff that he would need a hearing aid for his left ear.  (*Id.*)  Plaintiff was then transferred back to HCCC on the same day.  (*Id.* at 6-7.)  When Plaintiff returned, he spoke with a nurse practitioner who confirmed that the audiologist had recommended a hearing aid.  (*Id.* at 7.)  Plaintiff alleges that the nurse practitioner attempted to contact Dr. Smyczek for approval but did not receive a response.  (*Id.*)  The nurse practitioner then contacted Ms. Casas, who stated that she needed to review everything with Dr. Smyczek and Mr. D'Antico in order to approve the hearing aid.  (*Id.*)

On or around February 26, 2024, Plaintiff inquired about the status of his hearing aid, asking whether it had arrived yet or if he had to go elsewhere to retrieve it.  (*Id.*)  The medical/sick call kiosk informed him that his request was still being processed and that he would be notified once the hearing aid arrives.

On March 19, 2024, Plaintiff attended a telehealth appointment with Dr. Smyczek where he inquired about the status of his hearing aid.  (*Id.*)  Dr. Smyczek allegedly responded that they were waiting for it to arrive and would notify Plaintiff once it came in.  (*Id.*) During the appointment, Plaintiff explained that, "[he] really need[s] it" and that "[he] had it before so it shouldn't be a problem" as "it would stop [him] from having lock jaw [and] numbness on the left side of [his] face" and "vertigo problems."  (*Id.*)

On April 11, 2024, Dr. Smyczek, Ms. Casas, and Mr. D'Antico advised Plaintiff that he will be sent back to the audiologist, also referred to as ENT specialist.  (*Id.*)  Plaintiff then inquired as to the delay in receiving his hearing aid and questioned why he was being sent back to a specialist.  (*Id.* at 8.)  Plaintiff alleges that Ms. Casas said, "we are not trying to downplay your medical need [,] we just want to be sure before we spend all that money" and Mr. D'Antico said,

2

"a few more weeks aint going to kill you and have a good day. We will see you again in a week or so." (*Id.*)

Over a month later, Plaintiff attended an appointment with Dr. Smyczek on May 23, 2024, during which he was informed that he was scheduled to see the audiologist in August 2024. (*Id.*) Plaintiff questioned the delay again, asking, "why are y'all putting me through all of this when I was already prescribe[d] a hearing aid?" (*Id.*)  On June 24, 2024, Plaintiff met with Dr. Smyczek, again who reiterated that Plaintiff had an appointment with a specialist in August 2024. (*Id.* at 9.) Plaintiff expressed that his head continues to hurt behind his left ear, his jaw keeps locking up, and he is experiencing vertigo problems. (*Id.*)

On August 29, 2024, Plaintiff attended the appointment with the specialist in which the specialist conducted a CT scan and prescribed Plaintiff a hearing aid. (*Id.*) Upon returning to HCCC, Plaintiff informed Ms. Casas and Dr. Smyczek that the specialist had prescribed a hearing aid. (*Id.*)

On September 26, 2024, Plaintiff filed the instant Complaint. (*See generally* Compl.) Plaintiff alleges that Defendants deliberately disregarded medical treatment and failed to provide necessary care, constituting deliberate indifference and medical malpractice. (*Id.*) Plaintiff alleges that he has exhausted administrative remedies, stating that he "submitted many grievances still pending." (*Id.* at 6.) Plaintiff seeks six million dollars in compensatory, emotional distress, and punitive damages. (*Id.*)  On June 27, 2025, Defendants filed a Motion to Dismiss Plaintiff's Complaint for failure to exhaust administrative remedies and failure to state a claim. (D.E. 18). On July 20, 2025, Plaintiff filed his opposition. (D.E. 25 ("Plaintiff's Opposition" or "Pl.'s Opp.")).  On August 6, 2025, Defendants filed their reply. (D.E. 28 ("Defendants' Reply" or "Def.'s Reply")).

3

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that plausibility requires more than labels and conclusions, but less than a probability requirement); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a complaint must raise a right to relief above the speculative level).  A court may disregard legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (distinguishing factual allegations from legal conclusions), but may not weigh evidence or resolve factual disputes at this stage.  The inquiry is limited to whether the facts pleaded permit a reasonable inference of liability.  *Ashcroft*, 556 U.S. at 678.  Because this matter comes before the Court on a Motion to Dismiss, the Court accepts the factual allegations of the Complaint as true and draws all reasonable inferences in favor of Plaintiff.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

### B.  42 U.S.C. § 1983

As a general matter, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. That section provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

The Court construes pro se pleadings liberally and holds them to less stringent standards than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). As such, the Court shall dismiss any action brought with respect to prison conditions under §1983 or under any other Federal law if the Court is satisfied that the action fails to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(1).

## III.    DISCUSSION

### A.    Exhaustion of Administrative Remedies

Defendants seek dismissal of Plaintiff's claims for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). The PLRA provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

To satisfy the exhaustion requirement, a prisoner must "properly present[ ] his or her claims through one 'complete round'" of his or her prison's "established" grievance process, pursuant to the prison system's own "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). This includes constitutional claims and "applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "A prisoner must exhaust these remedies 'in the literal sense[;]' no further avenues in the prison's grievance process should be available." *Smith v. Lagana*, 574 F. App'x 130, 131 (3d Cir. 2014) (quoting *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004)). "[C]ourts consider '[e]xhaustion . . . separately for each claim . . . and if a complaint includes both exhausted and unexhausted claims, courts will dismiss the latter but not the former.'" *Walker v. Cnty. of Gloucester*, No. 15-7073, 2020 WL 1150134, at *5 (D.N.J. Mar. 10, 2020) (omissions and second alteration in original) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 364 (3d Cir. 2019)).

A plaintiff is a "prisoner" under the PLRA if he was confined in a correctional facility on the date the complaint was filed. *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002). "Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant." *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). "[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).

Defendants argue that Plaintiff's Complaint should be dismissed because he failed to exhaust remedies available to him because in his Complaint, Plaintiff indicates that he "submitted many grievances still pending." (Compl. at 6; D.E. 18-1 at 3 ("Defendants' Br.")) Defendants contend that this admission sets forth that Plaintiff initiated but never completed HCCC's grievance procedures that were available to him. (Defendants' Br. at 5.)

In opposition, Plaintiff argues that although he submitted several grievances through HCCC, they "were being redirected back to the medical administration for review." (Pl.'s Opp. at

6

12.) Moreover, Plaintiff contends that "there were no remedies or solutions, just a whole lot of farce within the medical administration and the administration at HCCC" and he "received final administrative reviews and denials—demonstrating full and proper exhaustion." (Pl.'s Opp. at 13.) Plaintiff further alleges he was "denied access to grievance forms[,]" "grievances went unanswered or were lost in systemic backlog, rendering the process effectively unavailable." (*Id.*)

This Court may only grant the Motion if it is plain from the face of the Complaint that Plaintiff failed to exhaust his administrative remedies. The face of the Complaint indicates that Plaintiff did file grievances with HCCC, but it is unclear to this Court whether HCCC complied with its own procedures. Plaintiff alleges that his grievances were "redirected" sometimes and that he received final administrative reviews other times. (*Id.*) A prison's remedy system is "unavailable" under the PLRA if officials do not follow their own procedures. *See Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 155 (3d Cir. 2016). Additionally, "[d]iscovery may yield information relevant to the exhaustion issue, so the Court concludes the parties should have the benefit of discovery before presenting dispositive arguments regarding exhaustion." *Brown v. Smith*, No. 20-cv-8463, 2023 WL 120458, at *2 (D.N.J. Jan. 5, 2023). Therefore, this Court declines to dismiss the Complaint based on failure to exhaust.

B.     Fourteenth Amendment

Defendants also allege that Plaintiff fails to state a claim under the Fourteenth Amendment for failure to provide medical care. The Third Circuit has found deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (internal citations omitted). "[T]here is a critical distinction 'between

cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (quoting *United States ex rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). "Unlike the deliberate indifference prong of an adequacy of care claim (which involves both an objective and subjective inquiry), the deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry—since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim." *Id.* at 537. "All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors." *Id.*

Plaintiff alleges that Defendants delayed his access to a hearing aid for monetary reasons, saying they "wanted to be sure before [they spent] all that money." (Compl. at 8). Therefore, Plaintiff has sufficiently alleged that his medical care was delayed for non-medical reasons. Therefore, this Court declines to dismiss the Complaint.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED**. Defendants shall answer, move, or otherwise reply to the amended complaint in accordance with Federal Rule of Civil Procedure15(a)(3). An appropriate Order follows.

_____
**SUSAN D. WIGENTON, U.S.D.J.**
Dated: March 12, 2026